# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSE MCKINLEY CARTER, Jr.,** | : | **CIVIL NO. 3:12-CV-1955** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **WARDEN J.E. THOMAS,** | : | |
| **LEWISBURG U.S.P.,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Jesse McKinley Carter, Jr. ("Carter" or "plaintiff"), an inmate formerly incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania ("USP-Lewisburg") initiated this civil rights action on October 1, 2012, naming as defendants Warden J.E. Thomas ("Thomas"), G. Shuck ("Shuck"), L. Cunningham ("Cunningham"), Brewer, Hollibeck, Lincalerter, Miller, Criswell, Buebendrof, Packer and T. Crawley ("Crawley"). Presently pending is defendants' motion (Doc. 43) to dismiss and/or for summary judgment. For the reasons that follow, the motion to dismiss and/or for summary judgment will be granted.

**I.   Motion to Dismiss**

   **A.   Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn

therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the

2

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### B.    Allegations of the Complaint

After being charged in an incident report on August 11, 2012, Carter was transferred from the federal prison satellite camp at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), to the Special Housing Unit ("SHU") within USP-Lewisburg, where he remained until October 17, 2012.  (Doc. 37, pp. 6, 15).  He alleges that while housed in the SHU, defendants Criswell, Buebendrof, Packer, and Crawley mentally and physically tortured him by denying him "basic human rights" such as daily recreation, haircuts, access to the law library and a laundry bag.  (Id. at 6, 8).  He was purportedly forced to move into a cell with two other inmates and had to sleep on the "dirty nasty floor," and was subjected to twenty-four hour lock down, except for three times per week when he was taken to the shower.  (Id.)

He also alleges that he was denied access to the administrative review process by defendants Shuck, Brewer, Cunningham, Miller, Lincalerter and Hollibeck.  (Doc. 1, p. 7).  As a result, he allegedly was unable to grieve the denial of his basic human rights by defendants Criswell, Burbendrof, Packer and Crawley.  (Id.)  He also avers that he was unable to pursue his complaint that defendant Miller, who allegedly was responsible for the management of his legal affairs, "resentenced" him by using information from his pre-sentence investigation report.  (Id. at 8-9).

Carter alleges "[w]ith respect to Defendant  J. E. Thomas[ ] [a]ccording to B.O.P.

policy and 28 C.F.R. 541[ ] Executive Staff is required to walk through the (SHU) at least once a week, stop at every cell and ask is inmate all right.  If Warden Thomas would have followed B.O.P. Policy and federal law, Plaintiff would have been able to tell him what the Defendant's [sic] of U.S.P. Lewisburg's (SHU) G-Block were doing in his (SHU).  As Chief Administrative Judicial Officer[] [t]he Defendant Warden Thomas is responsible for the actions of the Staff who work under his supervision and/or command."  (Doc. 37, pp 11-12).

### C.    Discussion

A Bivens action is the federal counterpart to an action filed under 42 U.S.C. § 1983. See Paton v. LaPrade, 524 F.2d 82 (3d Cir.1975); Farmer v. Carlson, 685 F. Supp. 1335, 1338 (M.D.Pa. 1988).  Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  See 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. Conditions of Confinement

The Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take 'reasonable measures to guarantee the safety of the inmate.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994), quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984). In order to demonstrate an Eighth Amendment deprivation the inmate "must establish 'both an objective element—that the deprivation was sufficiently serious—and a subjective element—that a prison official acted with sufficiently culpable state of mind, *i.e.*, deliberate indifference.'" Simpson v. Horn, 25 F. Supp.2d 563, 570 (E.D.Pa. 1998), quoting Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996) (additional citations omitted). The relevant test for determining the objective component, whether a deprivation was sufficiently serious, is "whether the conditions alone or in combination deprive the inmates of the minimal civilized measures of life's necessities." Union Cnty. Jail Inmates v. DiBuono, 713 F.2d 984, 999 (3d Cir. 1983), citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981). The subjective factor, deliberate indifference, requires a showing that the official knows the inmate faces a substantial risk of harm and disregards that risk. See Beers–Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir.2001).

Individual liability can be imposed if the actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action

5

must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08 (3d Cir. 1988); see also, Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003).  Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible.  Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode, 845 F.2d at 1208.

Carter seeks to impose liability on Warden Thomas based on his failure to conduct weekly visits to the SHU inmates in accordance with the BOP's SHU monitoring policy.  It is clear that Carter names the warden in his supervisory capacity.  He fails to set forth specific instances of constitutional misconduct, and he does not allege that Thomas knew of, and  acquiesced in, or played an affirmative part in, the alleged unconstitutional conditions of which he complains.

Carter also alleges that defendants Buebenderof, Criswell, Packer and Crawley subjected him to unconstitutional conditions of confinement.  However, the conditions of which Carter complains, alone or in combination, do not rise to the level of constitutional violations.  See, e.g., Williams v. Delo, 49 F.3d 442, 444–47 (8th Cir. 1995) (finding no Eighth Amendment violation where prisoner was placed in strip cell without clothes, water in cell was turned off and mattress removed, and prisoner's bedding, clothing, legal mail, and

hygienic supplies were withheld); see Harris v. Fleming, 839 F.2d 1232 (7th Cir. 1988) (holding that denial of toilet paper for five days, denial of soap, toothbrush, and toothpaste for ten days, and denial of exercise for twenty-eight days did not constitute cruel and unusual punishment); see Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D.Pa. 1992) (finding no Eighth Amendment violation where the plaintiff alleged that "he was denied meals, clean clothes, showers and recreation periods, but not that he went hungry or lived in an unsanitary, wholly sedentary environment"). Specifically, his allegations of sleeping on a mattress on the "dirty and nasty" floor are insufficient to satisfy either the objective or subjective component. See Peterkin v. Jeffes, 855 F.2d 1021, 1026–27 (3d Cir. 1988) (holding that sleeping on dirty mattress on floor does not rise to the level of an Eighth Amendment violation); Wilfong v. Morris Cnty Corr. Facility, 2006 WL 3392938 (D.N.J. 2006) (finding that allegations concerning an unsanitized mattress did not rise to the level of deliberate indifference or wanton infliction of pain). With respect to the alleged denial of recreation for a two-month period, there is no doubt that "meaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.' " Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir.1988) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). However, lack of opportunity to exercise can only rise to a constitutional level "where movement is denied and muscles are allowed to atrophy, [and] the health of the individual is threatened." Spain, 600 F.2d at 199. Thus, while a constitutional violation may occur when the deprivation of exercise extends for a prolonged period of time, and tangible physical harm resulting from the lack of exercise is demonstrated, here, there are so such allegations.

Nor does the fact that he was purportedly denied regular haircuts rise to the level of a constitutional violation as haircut privileges have been held to be within the discretion of prison administration. See Williams v. Lackawanna Cnty. Prison, No. 4:CV–07–1137, 2010 WL 1491132, at *7 n. 9 (M.D.Pa. Apr.13, 2010) (providing inmate with haircut only once a month does not constitute a violation of Eighth Amendment) (citing Vile v. Matty, Civ. A. No. 90–6864, 1991 WL 137025, at *2 (E.D.Pa. July 17, 1991) (noting that "[h]aircut privileges . . . fall within the administrative discretion of prison officials . . . ")). The conditions of confinement claims against defendants Thomas, Criswell, Buebendrof, Packer and Crawley are subject to dismissal.

### 2. Access to Law Library

Carter also alleges that defendants Thomas, Criswell, Buebendrof, Packer, Crawley and Cunningham denied him access to the law library. It is well established that prisoners have a First Amendment right to access the courts which requires "access to adequate law libraries or adequate assistance from persons trained in the law." Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000). In order to establish an access to courts claim, plaintiff must show that he suffered an actual injury—"that [he] lost a chance to pursue a nonfrivolous or arguable underlying claim"—and that he has "no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205 (3d. Cir. 2008) (citations omitted). Importantly, "the actual injury requirement is not met by every type of frustrated legal claim; constitutional protections are applied only to a prisoner's direct or collateral attack on his or her sentence, or challenges to

prison conditions." Id. at 354–55; see also Shane v. Fauver, 209 F. App'x 87, 89 (3d Cir. 2006).

Plaintiff simply alleges that he was not taken to the law library. No actual injury to his ability to lodge a direct or collateral attack on his sentence or present a nonfrivolous, arguable claim is identified in his amended complaint, his response to defendants' motion and answer to statement of material facts (Doc. 54) or in his sur reply (Doc. 56) to defendants' reply.[1] Because he has not alleged sufficient facts to present a prima facie case of denial of access to the courts, the claim will be dismissed.

### 3. Grievance Procedure

Inasmuch as Carter attempts to advance a claim based on the alleged denial of access to the administrative remedy process, it is well-settled that prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137–38 (1977) (Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08–2038, 2008 WL 2600723 at *1 (3d. Cir. Jun. 30, 2008) (citing Massey v. Helman, 259 F.3d 641,

---

[1] In his affidavit in support of his original complaint, Carter details steps he has taken to have his conviction overturned (Doc. 4, at 10, 4-7) and contends that his inability to access the law library impeded his ability to continue his pursuit. However, review of his federal criminal docket sheet reveals that there was no activity in his criminal matter at the time. See electronic docket, USA v. Carter, 3:95-cr-00232-TJM-6, https://ecf.nynd.uscourts.gov. Additionally, his contention that he was unable to file a brief in the United States Court of Appeals for the Third Circuit in Carter v. Warden, Lewisburg USP, Civil No. 12-1423 is not supported by the docket. Specifically, on August 16, 2012, when Carter was housed in the SHU, he filed a "Letter-Motion" in the court of appeals. The motion was granted on August 22, 2012, affording Carter an additional ninety days to file a brief and appendix. On November 5, 2012, he sought another extension of time and was afforded an additional ninety days. He filed his brief and appendix on February 4, 2013.

647 (7th Cir.2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")  Any attempt by a prisoner to establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim.  See also Alexander v. Gennarini, 144 F. App'x. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); Pryor–El v. Kelly, 892 F. Supp. 261, 275 (D.D.C.1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).  Thus, Carter's claim that defendants Shuck, Brewer, Cunningham, Miller, Lincalerter and Hollibeck violated his constitutional rights by purportedly denying him access to the administrative review process is subject to dismissal.

          4.      Custody Classification

To the extent that the amended complaint can be construed to include a claim against defendant Miller based on a change in his custody classification, it is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v. Wakinekona, 461 U.S. 238, 245–46 (1983); Hewitt, 459 U.S. at 466–67; Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Meachum v. Fano, 427 U.S. 215, 224–25 (1976); Montanye, 427 U.S. at 242.  Consequently, the claim is subject to dismissal.

    **D.**    **Leave to Amend.**

A district court "should freely give leave [to amend] when justice so requires."

FED.R.CIV.P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure). An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted. In re NAHC, Inc. Securities Litig., 306 F.3d 1314, 1332 (3d Cir. 2002). As discussed, *supra*, it is clear that leave to amend would be futile based on Carter's failure to state any claims upon which relief could be granted.

Significantly, even had Carter successfully stated claims, as discussed below, the defendants would be entitled to an entry of summary judgment based on his failure to exhaust the administrative review process.

## II.     Motion for Summary Judgment

### A.     Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Turner v. Schering–Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, . . . [o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. Natl. Wildlife Fed'n, 497 U.S. 871, 888 (1990). "[T]he non-moving party may not simply sit back and rest on the allegations in the complaint; instead, it must 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial.' Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted)." Schiazza v. Zoning Hearing Bd., Fairview Twp., York County, Pa, 168 F. Supp. 2d 361, 365 (M.D. Pa. 2001). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B. Statement of Material Facts

A motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure "shall be accompanied by a separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried." See LR. 56.1. The opposing party shall file a separate statement of the material facts

as to which it is contended that there exists a genuine issue to be tried.  Id.

Defendants contend that Carter failed to properly exhaust administrative remedies with respect to any and all claims alleged in the amended complaint.  The Federal Bureau of Prisons ("BOP") has an administrative remedy procedure through which inmates can seek formal review of an issue relating to any aspect of his or her confinement.  (Doc. 47, n. 2 citing 28 C.F.R. §§ 542.10-542.15).  In order to exhaust appeals under the administrative review procedure, an inmate must first informally present his complaint to staff, and staff is to attempt to resolve the matter.  (Id. citing 28 C.F.R. § 542.13).  If the informal resolution is unsuccessful, then the inmate must execute the appropriate form to bring the matter to the attention of the warden, within twenty calendar days of the date of the incident.  (Id. citing 28 C.F.R. § 542.14).  If the inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within twenty calendar days.  (Id. citing 28 C.F.R. § 542.15).  If the response of the Regional Director is not satisfactory, the inmate may then appeal to the General Counsel of the BOP within thirty calendar days, which office is the final administrative appeal level in the BOP.  (Id.)  No administrative appeal is considered to have been fully exhausted until considered by the BOP's General Counsel.  (Id.)

In the ordinary course of business, computerized indices of requests for administrative review filed by inmates are kept in the BOP's SENTRY records system.  (Doc. 46-1, ¶ 8).  A review of those records reveals that Carter has filed fifty-six administrative remedy requests during federal incarceration.  (Doc. 46, ¶ 63).  While housed at the satellite camp at USP Lewisburg from March 4, 2010, through August 11, 2012, he submitted nineteen

13

administrative remedy requests, three of which were fully exhausted.  (Id. at ¶ 64).

Carter was placed in USP-Lewisburg's Special Housing Unit ("SHU") on August 11, 2012, after he was found to be in possession of a cell phone while at the satellite camp.  (Doc. 46, ¶ 11; Doc. 56, ¶ 2; Doc. 37, at pp. 1-2).  He alleges that on August 16, 2012, he submitted an informal remedy request to defendant Shuck complaining about the conditions of his confinement and the restricted access to the courts while housed in the SHU, but defendant Shuck never responded to his request.  (Doc. 46, ¶ 60).  Defendant Shuck processes requests for informal resolution for inmates assigned to his caseload, but he has no personal record that Carter gave him a request for informal resolution.  (Id. at ¶ 74).  Carter indicates that he "has witnesses to attest to the fact that plaintiff did receive a BP-8 from Counselor Shuck."  (Doc. 54, ¶ 74).  He also alleges that on August 22, 2012, and August 28, 2012, Defendants Miller, Lincalis, and Hollibeck refused to provide him with the forms needed to submit an administrative remedy request at the institution level or the forms needed to file an appeal with the Northeast Regional Office.  (Id. at ¶ 61).  Defendants Miller and Hollenbach do not recall that Carter "submitted requests" to them in August 2012 as alleged, but declare that when inmates request administrative remedy forms, they are provided to them.  (Id. at ¶ 72).  Defendant Lincalis indicates that he was not Carter's case manager and that he was not responsible for Carter's "legal affairs."  (Doc. 46-1, Declaration of J. Lincalis ("Lincalis Decl."), ¶ 3).  Several staff members of the prison camp at USP Lewisburg tour the G-Block housing unit each week and would have been available to provide administrative remedy forms to Carter if requested.  (Doc. 46, ¶ 73; Doc. 54, ¶ 73).

Carter wrote a letter to the BOP's Northeast Regional Office in which he stated that he could not obtain the forms he needed from staff at USP Lewisburg. (Doc. 46, ¶ 62; Doc. 54, at 19-22). The letter was received by the BOP's Northeast Regional Office on October 9, 2012, while Carter was still confined at USP Lewisburg, assigned administrative remedy appeal number 707967-R1, and rejected because: "(1) Carter either failed to attempt informal resolution or did not provide evidence of an attempted informal resolution; (2) Carter failed to first submit his request at the institution; and/or (3) Carter failed to attach copies of the request he submitted at the institution and the Warden's response." (Doc. 46, ¶¶ 65, 66). Carter concedes that he did not attempt to submit his letter to the Warden at USP Lewisburg before he contacted the Northeast Regional Office. (Doc. 46, ¶ 67; Doc. 54, at p. 7).

Carter was transferred from USP Lewisburg to the Low Security Correctional Institution in White Deer, Pennsylvania ("LSCI Allenwood") on October 18, 2012. (Doc. 46, ¶ 68). Inmates may file administrative remedies on issues which arise at institutions other than the one in which they are currently confined. (Id. at ¶ 69). Carter failed to pursue administrative relief with respect to the issues he was experiencing at USP Lewisburg while he was confined at LSCI Allenwood. (Id.) He asserts that "there was no need to try and file Administrative Remedy while at LSCI Allenwood because (1) Plaintiff still had the same Unti [sic] Team from Camp Lewisburg and (2), It would have been denied because the BP-8 was not filed." (Doc. 54, p. 7).

He was transferred to the Federal Correctional Institution in Elkton, Ohio ("FCI Elkton") on January 8, 2013. (Doc. 46, ¶ 70). While confined at FCI Elkton, he

15

successfully submitted two administrative remedy requests, both challenging the October 15, 2012, disciplinary hearing that resulted in his transfer from the USP Lewisburg satellite camp to the penitentiary. (<u>Id.</u> at ¶ 71).

**C.     Discussion**

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 206 F.3d 289, 291 (3d Cir. 2000).  It has been made clear that the exhaustion requirement is mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 741 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); Nyhuis v. Reno, 204 F.3d 65, 67 (3d Cir. 2000) (same).  This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

> In an attempt to excuse the exhaustion requirement, he argues as follows:
> Plaintiff did not attempt to submit a letter to Warden Thomas while at USP Lewinburg [sic] because I knew he would not have received it.  The same way staff denies receipt of the BP-8 Informal Resolution Form.  Plaintiff submitted a BP-8 to Counselor Shuck and then was told by Officer Packer I was banned from "REC".  What would they have done to me if they got there [sic] hands on a letter that Plaintiff wrote Warden Thomas, and there was no need to try and file Administrative Remedy while at LSCI Allenwood because (1) Plaintiff still had same Unti [sic] Team for Camp Lewisburg and (2), It would have been denied because the BP-8 was not filed.

(Doc. 54, p. 7).

Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies

unavailable. See Todd v. Benning, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in Miller v. Norris, 247 F.3d 736 (8th Cir. 2001)) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, see Harcum v. Shaffer, No. 06-5326, 2007 WL 4167161, at *5 (E.D.Pa. Nov.21, 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, see Mitchell v. Horn, 318 F3d 523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, see Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, see Camp v. Brennan, 219 F.3d 279, 280-81 (3d Cir. 2000) (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers).

Although Carter alleges that he was denied grievance forms by defendants Miller, Lincalis, and Hollenbach, and that defendant Shuck failed to respond to his initial request for relief, he fails to come forward with credible evidence to support his allegations. He represents that he has a witness to "attest to the fact that Plaintiff did receive a BP-8 from

18

Counsler [sic] Shuck, and when he gave it back Officer Packer came the next day and threaten[ed] plaintiff." (Doc. 54, ¶ 74). However, he fails to identify the witness or submit a declaration or affidavit from the witness or provide any documentation or evidence in support of his allegations that he was denied grievance forms or that defendant Shuck failed to respond to his inmate request. A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Carter fails to meet this burden.

Nor does he submit any evidence in support of his contention that it was futile to write to the warden and equally futile to attempt to exhaust once transferred to LSCI Allenwood or FCI Elkton. Significantly, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71 (3d Cir. 2000); see also DeHart v. Horn, 390 F.3d 262, 273 (3d Cir. 2004) ("Section 1997e(a) makes exhaustion of prison administrative remedies mandatory, regardless of the efficacy of the grievance process."). "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals' " Ross v. Martinez, No. 09–1770, 2009 WL 4573686, *3 (M.D.Pa. Dec.1, 2009). Moreover, a prisoner cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust if it also

appears, as is the case here, that the prisoner did not pursue a proper grievance once those impediments were removed.  See Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005).  Carter has failed to meet his burden with respect to the administrative exhaustion of his Bivens claims.  Defendants are therefore entitled to an entry of summary judgment.

### III.  Conclusion

For the reasons set forth above, defendants' motion (Doc. 43) to dismiss and/or for summary judgment will be granted.  An appropriate Order will issue.

**BY THE COURT:**

**s/James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated:          September 23, 2014